**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**COOKEVILLE DIVISION**

| | | |
|---|---|---|
| **ALEXANDER R. CARINO** | ) | |
| **#475438,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **NO.  2:18-cv-00007** |
| **v.** | ) | |
| | ) | |
| **WARDEN RUSTY WASHBURN,** | ) | |
| | ) | |
| **Respondent** | ) | |

**<u>MEMORANDUM OPINION</u>**

The *pro se* Petitioner is a state inmate serving an effective prison sentence of forty-three years for two counts of second-degree murder. (Doc. No. 5 at 21.)  He seeks a federal writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 5.)

Respondent moves to dismiss the petition on the basis that it is untimely. (Doc. No. 20.) For the reasons explained below, the Court will grant Respondent's motion and dismiss the petition.

## I.      BACKGROUND AND PROCEDURAL HISTORY

A Cumberland County grand jury indicted Petitioner on March 2, 2009, on two counts of felony murder and one count of especially aggravated robbery. (Doc. No. 19-1 at 9.)  Petitioner pleaded guilty on July 16, 2010, to two counts of second-degree murder and was sentenced to twenty-one years and six months in prison on each count, to run consecutively. (<u>Id.</u> at 12–13.) The judgments were stamped "ENTERED" by the court clerk on July 19, 2010. (<u>Id.</u>)  Petitioner did not file a direct appeal.

On November 12, 2010, the State moved to set aside Petitioner's judgments due to his

failure to abide by the terms of his plea agreement when he refused to testify at the trial of another defendant. (Doc. No. 19-11 at 5.) Petitioner wrote to his attorney on July 4, 2011, saying he needed the discovery in his case "because the state is going to take my plea cause I wouldn't testify so I need to see my evidence before they try to send me to trial." (Doc. No. 16 at 25.) The State later moved to withdraw its motion to set aside, and the trial court granted the motion to withdraw on October 25, 2011. (Doc. No. 19-11 at 6.) Thus, Petitioner's convictions and sentences remained undisturbed.

Over the next several years, Petitioner continued to send letters to counsel sporadically asking for his file, expressing dissatisfaction with his plea agreement, and indicating that he wanted to file "something" in his case. (Doc. No. 16 at 26–31.) The first five such letters are dated June 5, 2012, February 28, 2013, August 6, 2013, July 4, 2014, and June 13, 2016. (Id.) Petitioner received no response to those letters from counsel, whose office had moved. (Id. at 35.)

In January 2017, Petitioner filed a *pro se* habeas petition in state court, asserting that his convictions were void because a defect in the indictment caused the trial court to lack jurisdiction to enter judgment. (Doc. No. 19-1 at 3–13.) The state court denied relief on January 30, 2017. (Id. at 14–15.) The Tennessee Court of Criminal Appeals affirmed on August 3, 2017, and the Tennessee Supreme Court denied discretionary review on November 17, 2017. (Doc. Nos. 19-5, 19-9.)

On December 18, 2017, Petitioner sent a letter to the Tennessee Board of Professional Responsibility to complain about counsel's failure to respond to his letters or turn over his file. (Doc. No. 16 at 32–33.) That complaint prompted a January 11, 2018 letter from counsel to Petitioner stating that counsel had no record of receiving Petitioner's letters but would gather and

send his file as soon as possible, and a follow-up letter on January 16, 2018, which mentioned that counsel's office had moved "several years ago" and indicated that the letter was accompanied by Petitioner's entire file. (Doc. No. 16 at 34–36.)

Also on January 16, 2018, the trial court received Petitioner's *pro se* petition to amend the judgment in his case. (Doc. No. 19-11 at 7.) Petitioner quoted the statement of the victim's brother at his plea and sentencing hearing to the effect that the family forgave him, referenced his good behavior and self-improvement in prison, and asked that his sentences be ordered to run concurrently rather than consecutively. (<u>Id.</u> at 7–9.) The court summarily denied the motion on January 25, 2018. (<u>Id.</u> at 10.)

On March 22, 2018, Petitioner filed a *pro se* post-conviction petition in the trial court asserting ineffective assistance of counsel. (Doc. No. 10-19 at 3–28.) Petitioner blamed the lateness of his petition on counsel's failure to provide him with his file until January 2018 and his lack of adequate access to the law library in prison. (<u>Id.</u> at 25.) He also argued that the statute of limitations for his petition should not be deemed to have started until the state withdrew its motion to set aside his judgments on October 25, 2011. (<u>Id.</u>) The trial court dismissed the petition without hearing on April 2, 2018, on the basis that it was filed beyond the applicable one-year statute of limitations. (<u>Id.</u> at 29–30.) The Tennessee Court of Criminal Appeals affirmed that dismissal on November 2, 2018, and the Tennessee Supreme Court again denied discretionary review on February 20, 2019. (Doc. Nos. 19-15, 19-20.)

Petitioner initiated this action on January 9, 2018, when he delivered his unsigned original *pro se* petition for a federal writ of habeas corpus to the prison mail room for mailing. (Doc. No. 1 at 26.) He simultaneously moved to hold the case in abeyance because he was "currently moving the Trial Court to allow him equitable tolling for an out of time post-

conviction." (Doc. No. 2.)  The Court required Petitioner to sign his petition and stayed the case with Respondent's agreement. (Doc. Nos. 4, 14.)  The case was reopened on May 20, 2019, on Petitioner's motion. (Doc. No. 17.)  Respondent moved to dismiss the petition as untimely on May 31, 2019, and Petitioner has not responded to that motion, despite seeking and receiving an extension of time to do so. (Doc. Nos. 20, 22, 23.)  Accordingly, pursuant to its previous warning to Petitioner, the Court considers Respondent's motion to be ripe for review. (Doc. No. 23 at 3); see also Local Rule 7.01(a)(3) (providing that a motion to which no timely response is filed will be deemed unopposed).

## II.    ISSUES PRESENTED FOR REVIEW

Petitioner presents two claims for relief.  First, he asserts that his felony murder indictments failed to state an offense because they specified an underlying felony—especially aggravated robbery—that is not included in the felony murder statute's list of qualifying felonies. (Doc. No. 5 at 5–6, 19.)  Second, Petitioner asserts that the trial court lacked subject matter jurisdiction to enter judgment against him, and that he did not knowingly and voluntarily waive the jurisdiction issue. (Id. at 6, 19.)  He states that both these claims were exhausted in the 2017 state habeas proceedings. (Id. at 5, 7.)

## III.    RESPONDENT'S MOTION AND ANALYSIS

Respondent asserts that Petitioner's habeas corpus petition is barred by the applicable statute of limitations. (Doc. No. 20.)  The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a one-year limitations period for habeas petitions brought by prisoners challenging state-court convictions. 28 U.S.C. § 2244(d).  Under this provision, the limitations period runs from the latest of four enumerated events:

(A) the date on which the judgment became final by the conclusion of direct

review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id. § 2244(d)(1). Although the running of the period is tolled while any "properly filed" collateral review petition is pending in state court, id., § 2244(d)(2), the AEDPA tolling provision does not "revive" an already expired limitations period (i.e., restart the clock); it can only serve to pause a clock that has not yet fully run. Payton v. Brigano, 256 F.3d 405, 408 (6th Cir. 2001). After the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations bar. Id.; McClendon v. Sherman, 329 F.3d 490, 493 (6th Cir. 2003).

Petitioner's convictions became final on August 18, 2010, upon the expiration of the thirty-day period within which he could have filed an appeal from the July 19 judgments. See Tenn. R. App. P. 4(a) ("In an appeal as of right . . . the notice of appeal required by Rule 3 shall be filed with the clerk of the appellate court within 30 days after the date of entry of the judgment appealed from[.]"). Accordingly, Respondent asserts that Petitioner's limitations period expired one year from that date, on August 18, 2011. (Doc. No. 21 at 5.)

Although Petitioner did not respond to Respondent's motion to dismiss, he previously filed a "Motion to Amend," in which he argues that equitable tolling should apply to make his petition timely. (Doc. No. 16.) This document repeats the two explanations Petitioner gave in state court for the lateness of his post-conviction petition: that his attorney did not provide his file until January 2018, and that he has had limited library access due to frequent prison lock-downs and under-staffing between 2012 and now. (Id. at 2–3.) He also adds that he has a history

of ADHD, PTSD, and severe anxiety, and that those "mental disabilities prevented timely filing in this case and should be considered a case of mental incompetence." (Id. at 2.)

AEDPA's one-year statute of limitations may be subject to equitable tolling under appropriate circumstances, allowing courts to review otherwise time-barred habeas petitions where the failure to file in a timely fashion "unavoidably arose from circumstances beyond that litigant's control." Keeling v. Warden, Lebanon Corr. Inst., 673 F.3d 452, 461 (6th Cir. 2012); accord Holland v. Florida, 460 U.S. 631, 645 (2010). To be entitled to equitable tolling, a petitioner must show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Lawrence v. Florida, 549 U.S. 327, 336 (2007) (citation and internal quotation marks omitted). This is a fact-intensive inquiry to be evaluated on a case-by-case basis, and Petitioner carries "the ultimate burden of persuading the court that he or she is entitled to equitable tolling." Keeling, 673 F.3d at 462.

Petitioner has not carried this burden. Petitioner did not send the first letter to counsel asking for his file until July 4, 2011, little more than a month before his limitations period expired. (Doc. No. 16 at 25.) His five letters over the next five years do not establish diligent efforts to pursue habeas relief. Moreover, Petitioner drafted and mailed his original petition in this case a full week before counsel mailed his file to him (see Doc. No. 16 at 35), so possession of the file maintained by counsel was not a prerequisite to asserting his claims. In fact, Petitioner had presented precisely the same claims a full year earlier in his state habeas petition. (Doc. No. 19-1 at 3–8.) The Court also observes that: (1) Petitioner's January 2017 state habeas petition included his criminal docket number, his indictment number, and specific citations to Tennessee Code, and attached copies of his indictment and judgments (Doc. No. 19-1 at 3–13); (2) Petitioner's January 2018 filing in this Court includes dates and docket numbers for his state-

court cases, and a copy of the Tennessee Court of Criminal Appeals' August 2017 opinion in his state habeas case (Doc. No. 1); and (3) his January 2018 petition to amend judgment filed in the trial court quoted a statement from his sentencing hearing at length. (Doc. No. 19-11 at 8.) Those facts establish that Petitioner possessed at least those portions of his file relevant to the matters he chose to litigate even before counsel furnished the entire file. Nothing about the delay in Petitioner's receiving his entire file, therefore, warrants the extraordinary application of equitable tolling in this case.

Petitioner's limited access to the library and legal materials also does not explain the lateness of his petition. He alleges that chronic problems at West Tennessee State Penitentiary and Trousdale Turner Correctional Complex restricted his access to the legal library. (Doc. No. 16 at 3.) But he states that he was first housed in one of those facilities in 2012, by which time his limitations period had already expired. (Id.) Accordingly, those problems had no impact on Petitioner's ability to file a timely petition.

And finally, none of Petitioner's alleged mental health diagnoses, either individually or combined, amounts to a mental incompetence that prevented Petitioner from filing a timely habeas petition. Petitioner's *pro se* litigation in state court, his letters to counsel, and his bar complaint about counsel all indicate that Petitioner was sufficiently lucid and in command of the facts of his case to have filed a habeas petition long before January 2018. In fact, Petitioner's January 2018 petition to amend his judgment indicated that during his time in prison to that point he had worked a full-time job, was considered a good inmate, had completed a vocational training program and an anger management program, and had started earning college credits toward an Associate's Degree. (Doc. No. 19-11 at 2–3.) Given Petitioner's demonstrated abilities to communicate clearly (or enlist help to do so) and otherwise act responsibly from 2011

7

to 2018, Petitioner has not demonstrated that he diligently pursued his legal remedies during that period or that any unavoidable obstacle prevented him from doing so.

Accordingly, Petitioner's untimely petition must be dismissed.

## IV.    ALTERNATIVE RULING ON PETITIONER'S CLAIMS

Alternatively, it is equally clear that Petitioner's claims would not entitle him to relief even if they were timely. Petitioner's claims effectively rest on his belief that an error in his indictment deprived the trial court of jurisdiction to accept his plea. A defendant generally waives any challenge with regard to his indictment by pleading guilty to the crimes for which he is convicted. "A valid guilty plea waives all non-jurisdictional defects in the defendant's indictment." United States v. Ball, No. 93-3743, 12 F.3d 214 (Table), 1993 WL 524240, at *1 (6th Cir. Dec. 15, 1993) (citing Tollett v. Henderson, 411 U.S. 258, 267 (1973)). The Supreme Court has ruled that

> a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards [applicable to ineffective-assistance claims].

Tollett, 411 U.S. at 267.

Petitioner asserts, without support, that the trial court lacked jurisdiction over his case because of alleged defects in the indictment, but the Tennessee Court of Criminal Appeals found no merit in that argument on appeal from the denial of his state habeas petition:

> Relative to the Petitioner's contention that the trial court was deprived of jurisdiction to enter judgments relative to the homicide charges because the especially aggravated robbery charge was dismissed and because the case was not resubmitted to the grand jury to obtain two charges for second degree murder, we conclude that the Petitioner['s] allegations are without merit. The judgments

reflect that the Petitioner pleaded guilty to two counts of second degree murder, a lesser included offense of first degree felony murder, and that the independent especially aggravated robbery charge was dismissed. See T.C.A. § 40-18-110(g)(1) (2012) (amended 2016) ("Second degree murder is a lesser included offense of first degree murder as defined in § 39-13-202."). The judgments and the record do not reflect that the indictment relative to the homicide charges was amended or that it was amended improperly. See Tenn. R. Crim. P. 7(b)(1), (2). The judgments are not void because neither the judgments nor the record reflect that the trial court lacked jurisdiction to enter judgments or to sentence the Petitioner. We note that the Petitioner's sentences have not expired.

Nothing in our jurisprudence suggests that the prosecution is required to resubmit a case to a grand jury to obtain an indictment for a lesser included offense of the indicted offense before a defendant may plead guilty to the lesser included offense. We note, though, that a petitioner's agreement to plead guilty to an offense that is not a lesser included offense of the indicted offense is "in effect, [the petitioner's] consent to an amendment to the indictment." See Roy Allen Scott v. David Osborne, Warden, No. E2011-02021-CCA-R3- HC, 2012 WL 1523824, at *3 (Tenn. Crim. App. Apr. 30, 2012), perm. app. denied (Tenn. Aug. 17, 2012) (citing Tenn. R. Crim. P. 7(b)). Furthermore, an improperly amended indictment "would merely render the judgment voidable, not void." Id. Likewise, the prosecution's dismissal of the independent especially aggravated robbery charge did not impact the validity of the remaining homicide indictment counts or the trial court's jurisdiction to enter judgments on those counts. We note that the prosecution is permitted but not required to charge independently the predicate felony serving as a basis for a felony murder allegation. Therefore, the Petitioner has failed to establish that the trial court lacked jurisdiction to enter judgments and sentence him relative to the second degree murder convictions. The Petitioner is not entitled to relief.

Relative to the Petitioner's contention that the indictment counts charging first degree felony murder were insufficient and defective, depriving the trial court of jurisdiction, he argues that those counts did not provide proper notice because attempted especially aggravated robbery, the predicate felony identified in the felony murder charges, is not included in the enumerated felonies contained in Tennessee Code Annotated section 39-13- 202(a). He argues that because the indictment did not allege the killings were committed during a robbery, as defined in Code section 39-13-401, the indictment was defective and deprived the trial court of jurisdiction.

Generally, allegations of a defective indictment must be presented before a trial or guilty plea. See Tenn. R. Crim. P. 12(b)(2)(B). However, the validity of an indictment may be challenged at any time if the allegation is that the indictment does not state an offense or confer jurisdiction upon the trial court. Dykes v. Compton, 978 S.W.2d 528, 529 (Tenn. 1998). An

> indictment must state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know

what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce proper judgment[.]

T.C.A. § 40-13-202 (2014).

Especially aggravated robbery is merely an aggravated form of robbery. In order to establish an especially aggravated robbery, the prosecution must prove that a defendant committed a "robbery as defined in § 39-13-401," that the defendant used a deadly weapon, and that the victim suffered serious bodily injury. Id. § 39-13-403 (2014). The indictment counts alleging that the victims were killed during an attempted especially aggravated robbery, as compared to a simple robbery, ultimately increased the State's burden. If this case had proceeded to trial, the State would [ ] have been required to establish, based upon the wording of the indictment, two elements in addition to showing the Petitioner attempted to commit a robbery, namely that a deadly weapon was used and that the victim suffered serious bodily injury. See Delivetrick D. Blocker v. Jim Worthington, Warden, No. E2008- 00881-CCA-R3-HC, 2009 WL 304022, at *4 (Tenn. Crim. App. Feb. 9, 2009) (concluding that an indictment count alleging the commission of first degree felony murder during the perpetration of an especially aggravated robbery provided sufficient notice of the felony murder offense and provided the trial court "an adequate basis upon which to enter a judgment"); see also State v. Steven Wayne Wilson, No. M2011-00004-CCA-R3-CD, 2013 WL 3041451, at *16 (Tenn. Crim. App. July 25, 2012) (determining that "the felony murder statute generally states the requisite underlying felonies [but that] . . . [n]ecessarily included in the list . . . is any other grade of the same felony"), perm. app. denied (Tenn. Dec. 13, 2012). If the State satisfied its burden in establishing attempted especially aggravated robbery, the State also would have necessarily satisfied its burden in proving an attempted robbery occurred.

The indictment provided the Petitioner sufficient notice of the alleged offenses, and the trial court had proper jurisdiction to accept his guilty pleas and to sentence the Petitioner pursuant to the plea agreement. The Petitioner is not entitled to relief upon this basis.

(Doc. No. 19-5 at 3–5.)

Petitioner obviously disagrees with this ruling, but he does not cite any authority establishing that it is contrary to, or an unreasonable application of, the Supreme Court's determination of federal law, as required to obtain relief on an exhausted claim under AEDPA. 28 U.S.C. § 2254(d)(1) (establishing AEDPA standard for federal habeas relief on a point of law determined by state court). To the contrary, even the absence of any indictment at all would be waived under federal law by Petitioner's guilty plea. See United States v. Daughenbaugh, 549 F.3d 1010, 1012 (5th Cir. 2008) ("Daughenbaugh asserts that because he had not been indicted

and did not knowingly and voluntarily waive his right to grand jury indictment, the district court plainly erred in accepting his guilty plea. This argument, however, is waived.").  Accordingly, Petitioner's claims would fail here, just as they did in state court, even if they had been timely filed.

## V.    CONCLUSION

For the foregoing reasons, it is apparent that Petitioner is not entitled to relief. Respondent's motion to dismiss will be granted, and this action will be dismissed.

An appropriate order shall enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE